

# THE ATTORNEY GENERAL
# OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

December 19, 1968

Honorable G. C. Franklin
Vice-President for Business
   Affairs
Midwestern University
Wichita Falls, Texas   76308

Opinion No. M-325

Re: Are the benefits of a
retirement trust, es-
tablished for the benefit
of the President of Mid-
western University, to be
regarded as salary supple-
mentation under the terms
of Section 24f, Article IV,
House Bill 5, Acts of the
60th Legislature, First
Called Session, 1968
(General Appropriations
Act)?

Dear Mr. Franklin:

The text of your recent letter, requesting the opinion of this office on the above captioned question, is as follows:

"Is the President of Midwestern University authorized to receive a $1,500 salary increase in the fiscal year beginning September 1, 1968, as provided under Sec. 24.f. of the Special Provisions Relating only to State Agencies of Higher Education, House Bill Number 5, as Enacted by the First Called Session of Sixtieth Legislature of the State of Texas, in view of the fact that a retirement trust is provided for his benefit? A copy of the Retirement Trust is attached for your review."

House Bill 5, Acts of the 60th Legislature, First Called Session, 1968, to which your inquiry is directed, contains the appropriations for the fiscal year beginning September 1, 1968, and ending August 31, 1969. Section 24f of Article IV (Special Provisions Relating only to State Agencies of Higher Education) provides:

"The Presidents of Tarleton State College, Prairie View A. and M. College, Texas A&I University, Texas Southern University, Midwestern

- 1593 -

University, Pan American College, East Texas
State University, Sam Houston State College,
Southwest Texas State College, West Texas State
University, Stephen F. Austin State College,
Sul Ross State College and Angelo State College
are appropriated One Thousand Five Hundred
Dollars ($1,500) more for the year beginning
September 1, 1968, than was appropriated for
the previous fiscal year. It is the intent
of the Sixtieth Legislature, First Called
Session, that these funds be in lieu of any
other salary supplementation, and of the funds
appropriated for salaries of the presidents of
the above named colleges, One Thousand Five
Hundred Dollars ($1,500) shall be deducted
from the salary of said president in the event
additional funds are used to supplement said
president's salary. This shall not apply to
funds paid in lieu of house and utilities."
(Emphasis added.)

Your question is whether a retirement trust, established
for the benefit of the President of Midwestern University, consti-
tutes such a salary supplementation as to render the President
of Midwestern University ineligible to receive the $1,500 ap-
propriation provided for by the bill. The copy of the trust
agreement attached to your letter provides, in part, as follows:

"1. Midwestern University Foundation, Inc.
(hereinafter referred to as 'FOUNDATION') a non-
profit organization, is desirous of providing
funds to disburse to Travis A. White, President
of Midwestern University, upon his retirement as
an inducement for him to remain in his capacity
as President until such time as he retires."
(Emphasis added.)

"2. Foundation shall from time to time pay
over funds to a Retirement Trust, which funds
shall be distributed according to the terms here-
inafter set forth.

"3. . . .

"4. Foundation as grantor of said Trust,
has made a contribution to said Trust and shall
make contributions in the future until the date

of retirement of Travis A. White in an amount
not less than $2,500.00 per annum.

"  . . . .

"Section 1.0:  There is hereby created a
retirement fund . . . for the exclusive benefit
of Travis A. White, and if not to Travis A. White,
then to the contingent beneficiaries hereinafter
named.

"  . . . .

"Section 3.0:  Distribution shall be made as
follows:

"Section 3.01:  When Travis A. White reaches
the normal retirement date or when he retires
voluntarily or is retired by Midwestern University
at an earlier date, he shall be entitled to re-
ceive all corpus and undistributed income of the
Trust.

"Section 3.02:  In the event Travis A. White
dies prior to retirement date, the Trust Estate
shall continue to be held IN TRUST, and the
Trustee in its sole and absolute discretion may
make distribution of either income or corpus to
or for the benefit of Evalyn M. White, wife of
Travis A. White.

"Section 3.03:  Upon the death of Evalyn M.
White, all corpus and undistributed income shall
be paid over to Midwestern University Foundation,
Inc., or its successor, and if it be not in
existence, then to Midwestern University, or its
successor."

It is the opinion of this office, after an examina-
tion of the trust agreement, that such agreement does establish
a trust fund.  In order for the trust fund to render the
President of Midwestern University ineligible to receive the
$1,500 appropriation allowed by Section 24f Article IV of the
Appropriations Bill, the trust agreement would have to provide
for salary supplementation.  What benefits to an individual
might constitute salary supplementation depend simply upon how
restricted or expanded a definition is given to the term.

The cardinal rule of legislative interpretation is that, where a statute is open to more than one interpretation, that interpretation which will give meaning to the intent of the Legislature shall be followed. As directed by Section 54 of Article V of the Appropriations Act, it is, therefore, the duty of the Attorney General to declare what was the intent of the Legislature in using the term "salary supplementation" in the instant provision.

The purpose of creating the trust, as stated in the instrument, is to provide a reward to the President, designed as an "inducement for him to remain in his capacity as President until such time as he retires." Similar benefits were considered in Attorney General's Opinion M-138 (1967), wherein it is held that the expenditure of State funds to pay premiums on insurance contracts concerning State employees is not extra compensation to such employees, but, being prospective, is in the nature of an inducement for rewarding faithful public service.

As there appears no indication that the Legislature considers the contributions of a university president less significant, or less worthy of reward for faithful public service, than those of other state employees; and as it appears that the trust instrument under consideration would not give rise to a conflict of interest situation, it is the opinion of the Attorney General that what constitutes "salary supplementation" should be viewed in an ordinary, limited sense in this instance.

"Salary", in the above sense, is defined as a fixed periodical compensation, paid at regular intervals, for services rendered in the course of one's employment. It contemplates funds to be paid regularly and to be presently available to, or under the actual or constructive control of, the person employed. 38 Words and Phrases 45 et seq., under "Salary", Blacks Law Dictionary, Fourth Edition, p. 1503, under "Salary". Given its ordinary meaning, "supplement" is defined as an addition to something, already organized or set apart. 40A Words and Phrases 361 et seq. Employing the well settled maxim of statutory construction for the determination of legislative intent, noscitur a sociis, we hold that where the meaning of the word is doubtful, it shall be construed in light of the words used in association with it. 53 Tex.Jur.2d 221, "Statutes", §154. Thus, a supplement to salary would be, in the instant case, a benefit received by the President in approximately the same manner, and for approximately the same reasons, as his salary.

It is clear, from reading the trust agreement, that

the trust makes no funds presently available to the use or control of the President, and that some undetermined sum is only prospectively available at some future, undetermined date. The funds paid into the trust are paid periodically, to the extent that a contribution will be made each year, on no ascertainable schedule, but there is no provision for periodicity in their disbursement. The sums contributed are fixed only as to a minimum amount to be deposited, so that it can never be definitely foreseen what amount will be contributed in a year, or what amount will ultimately be available for disbursement.

Thus, it is the opinion of the Attorney General, that contributions to the retirement trust, established for the benefit of the President of Midwestern University, are not to be deemed supplemental to his salary; nor is the existence of a retirement trust to be regarded as a salary supplement; nor shall any funds which the President might ultimately receive from the trust be considered salary supplement. Consequently, the trust agreement in question shall in no way preclude payment to the President of Midwestern University of the $1,500 appropriation granted by Section 24f, Article IV of the Appropriations Bill.

S U M M A R Y

The establishment of a retirement trust for the benefit of the President of Midwestern University, and the existence of and contributions to said trust, does not constitute a supplement to the salary of said person, so that such a trust does not act to render the President of Midwestern University ineligible to receive the benefits of Section 24f, Article IV, House Bill 5, Acts of the 60th Legislature, First Called Session, 1968 (General Appropriations Act).

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Bill Corbusier
Assistant Attorney General

Hon. G. C. Franklin, page 6 (M-325)


APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
Sam Kelley
James Quick
Tom Fortescue
Richard Chote

HAWTHORNE PHILLIPS
Staff Legal Assistant